# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY



**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**

**50 WALNUT STREET, P.O. BOX 419**
**NEWARK, NJ  07101-0419**
**(973) 645-6340**

**WILLIAM J. MARTINI**
> **JUDGE**

**LETTER OPINION**

July 1, 2009

J. Barry Cocoziello
Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman PC
The Legal Center
One Riverfront Plaza
Newark, NJ 07102-5497

> (*Attorneys for Plaintiff*)

Christopher R. Carton, Esq.
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ 07102
> (*Attorneys for Defendant*)

> Re:  *Consult Urban Renewal Dev. Corp. v. T.R. Arnold & Assoc., Inc.*
>      Civil Action No. 06-1684 (WJM)

Dear Litigants:

This matter comes before the Court on Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. R. 56.  Oral arguments were not held, pursuant to Fed. R. Civ. P. R. 78.  For the reasons set forth below, Defendant's motion is **DENIED**.

## I.   BACKGROUND

Plaintiff Consult Urban Renewal Development Corporation ("Consult") was the construction manager for an affordable housing project under development in North Wildwood, New Jersey (the "Project").  (Cocoziello Decl. 1.; Compl. ¶ 1.)  As construction manager, Consult entered into a contract in 1998 with DeLuxe Building Systems ("DeLuxe") to manufacture and supply prefabricated, modular housing units (the "Units).  (Cocoziello Decl. 1.; Compl. ¶ 2.)  DeLuxe manufactured the Units at its facility in Pennsylvania, transported them to New Jersey, and installed them at the Project site.  (Cocoziello Decl. 1.; Compl. ¶ 3.)  Under

New Jersey law, all prefabricated housing built outside the state for use within New Jersey must undergo inspection, certification, and labeling to verify compliance with state building codes and other guidelines.  *See generally* N.J.A.C. §5.23-4A-10.  Thus, the contract between Consult and DeLuxe specified that DeLuxe would maintain a relationship with an independent, third party inspection agency to fulfill all inspection requirements.  The agency would inspect the Units and label them to indicate they were satisfactory.  (Cocoziello Decl. Ex. A.; Compl. ¶¶ 5-6.)

To satisfy the inspection requirements imposed by the contract, DeLuxe relied upon a pre-existing agreement with Defendant T.R. Arnold & Associates ("Arnold"), an inspection services company.  (Compl. ¶ 2.) In March 2000, Defendant Arnold represented that it had inspected all 366 of the Units, found all to be satisfactory, and in compliance with applicable law, labeled each one accordingly.  In reliance upon this representation, Consult made a significant partial payment to DeLuxe and the Project went forward.  (Compl. ¶ 11.)

Almost immediately, Consult noticed discrepancies between the actual Units and the specifications set forth in the contract with DeLuxe.  Specifically, Consult observed violations of New Jersey building codes, water damage, mold infestation, and broken exterior sheathings.  (Compl. ¶ 22.) Consult requested that DeLuxe repair or replace the Units, but DeLuxe refused to do so.  (*Id.*)

In response, Consult asserted claims against DeLuxe in arbitration.  (Compl. ¶ 24.) The arbitration panel awarded damages to both Consult and DeLuxe but determined there was no prevailing party.  (Cocoziello Decl. Ex. D).  Consult now seeks damages from Arnold, in contract and in tort.  Consult alleges that although it was not a direct party to the contract between DeLuxe and Arnold, it was a third party beneficiary to that contract and therefore has standing to sue for breach.  Consult also alleges that Arnold was negligent in performing its obligations as a third party inspecting agency, causing it to suffer damages.

Defendant Arnold has filed a motion for summary judgment, arguing that (1) Consult cannot bring a contract claim because it was not a third party beneficiary and thus has no standing; (2) Consult's negligence claims are barred by the economic loss doctrine; (3) Consult cannot proceed with its negligence claim because it did not produce a report from a qualified expert; and (4) Consult cannot succeed on its negligence claim because it failed to prove causation.  This is Arnold's second motion for summary judgment.  The first was denied in April 2007, and Arnold now concedes it was premature.

For the reasons stated below, Defendant's motion for summary judgment is DENIED in its entirety.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing that no genuine issue of material fact exists rests initially on the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's

case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### B.    Breach of Contract Claim
#### 1.    Third Party Beneficiary

This Court first considered whether or not Plaintiff is a third party beneficiary to the contract between DeLuxe and Arnold in its April 2007 opinion denying Arnold's motion for summary judgment. In that opinion, the Court held that New Jersey law should govern the analysis. Moreover, the Court determined that under New Jersey law, it is the intent of the parties at the time the contract is signed that determines whether a third party is a beneficiary with contractual standing. *See Broadway Maintenance Corp. v. Rutgers,* 90 N.J. 253, 259-60 (1982). Absent an intent to recognize a right to performance in a third party, the party is merely an incidental beneficiary with no contractual standing. *Id.* at 259. The parties may expressly contract to include or exclude any potential third party beneficiaries. *Id*. at 260. To determine the parties' intent, the Court must look to both the language of the contract and to the surrounding circumstances.

In 2007, the Court held that there was insufficient evidence to support Defendant's contention that the parties intended to exclude third party beneficiaries. The language of the contract itself was silent and the surrounding circumstances were equally unavailing. Moreover, as the Court observed in a footnote, the parties did not submit affidavits attesting to their state of mind and intention at the time the contract was signed. Therefore, summary judgment was denied.

In its second Motion for Summary Judgment that is presently before the Court, Arnold again argues that Consult does not have standing to sue in contract because at the time the contract was signed, neither Arnold nor DeLuxe intended to benefit any third parties. Therefore, the argument continues, Consult is not a third party beneficiary. (Def.'s Br. 6). This time, Arnold has submitted sworn affidavits from itself and from DeLuxe stating that at the time the inspection contract was signed, they did not intend for any other party to benefit. (Affidavit of Thomas Arnold; Affidavit of Donald Meske). The affidavits are the only new evidence with respect to the parties' intent.

While the 2007 opinion noted the absence of an affidavit demonstrating Arnold's intent, the presence of such an affidavit is just one factor the Court should consider when determining the parties' intentions. Especially given the self-serving nature of the affidavits, they are by no means dispositive on the issue.

More significant to this inquiry are considerations of the general nature and purpose of the inspection contract. The very reason the parties negotiated and entered into the inspection

3

contract was to enable DeLuxe to sell its housing units to third parties who would not buy them if they did not comply with state laws. Both DeLuxe and Arnold knew or should have known that DeLuxe was manufacturing the housing units either for resale to third parties or upon commission of third parties and not for its own use. Even if they did not explicitly consider third parties at the moment they executed the contract, this was the primary purpose behind entering into the business arrangement. Thus, viewing the evidence in the light most favorable to the non-moving party, the facts tend to support Plaintiff's position that as a consumer of prefabricated modular housing units, it was a member of a class of third party beneficiaries intended under the contract. At the minimum, there are material facts still in dispute, and summary judgment is denied.

### C.     Negligence Claim
#### 1.     Economic Loss Doctrine

The economic loss doctrine is a judicially created rule that prevents a party from being able to collect in negligence for pecuniary harm that is unaccompanied by personal injury or consequential damages to other property. 6 Bruner & O'Connor on Construction Law § 19:10 ("BOCL"). In general, courts decline to impose a duty to exercise reasonable care to avoid intangible economic loss to others that do not arise from tangible physical harm to persons and tangible things. *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 310 (2002). The rationale behind the doctrine is that tort law is designed to address unreasonable risks of harm and cover unexpected injuries. *Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 632 (1997). When a product simply fails to meet the purchaser's economic expectations, contract principles are better suited. *Id.* Thus, Defendant alleges that Plaintiff cannot collect in negligence because there was no harm to any person or property beyond the Units themselves. (Def's Br. 7).

However, this argument is unavailing and does not satisfy the summary judgment standard. As Plaintiff observes, the body of caselaw pertaining to the economic loss rule is inappropriate here, because the rule typically applies to the sale of goods, not the provision of services. 6 BOCL § 19:10; 5 BOCL § 17:90. Defendant was providing inspection services, not the Units themselves. While some jurisdictions have chosen to extend the economic loss doctrine to services, there is no evidence to suggest that New Jersey has done so. *Id.*

Moreover, the policy rationale behind the economic loss doctrine is that contract law is more suitable for the adjudication of certain types of claims because the parties are able to negotiate the allocation of the risk at the outset. 6 BOCL § 19:10; *see also Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. at 632. Here, as Defendant admits, Consult was at most a third party beneficiary to the inspection contract. As such, it had no opportunity to negotiate the terms of the agreement or the amount of risk it would accept. Therefore, it makes little policy sense to apply the doctrine to the present situation.

The body of caselaw that is better suited to this dispute is that which covers the duty owed by professionals to unrelated third parties who rely on the professional's services. *See Saltiel v. GSI Consultants*, 170 N.J. at 311. To determine whether a professional owes a duty to unrelated third parties, New Jersey courts look to a variety of factors. *Grand Street Artists v. General Electric Co.*, 19 F.Supp.2d 242, 248 (1998). The most important is the foreseeability of injury to others. Other factors include the relationship of the parties, the nature of the attendant

risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. *Id.*

As explained above, when DeLuxe and Arnold negotiated the inspection contract, they both were, or should have been, aware that third parties would be relying on the inspection services provided. Moreover, given that the construction industry is both a highly technical field and is accompanied by many attendant dangers, they had to be aware of the risk of harm. Finally, there is a strong public interest at stake, which is indeed the very purpose behind New Jersey's building codes. The evidence tends to support finding that Arnold had a duty to Consult and also that the economic loss doctrine does not apply. Therefore, summary judgment is denied.

## 2. Qualified Expert Issue

Defendant alleges that Consult cannot prove its negligence claim because expert testimony is needed to do so but (1) Consult's proposed expert witness fails to meet the standard for expert witnesses set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and (2) because Consult failed to submit an affidavit of merit for its proposed expert witness, as required by NJSA 2A:53A-26.

Generally, expert testimony is required in situations where a jury of laypersons lacks sufficient knowledge or understanding of the subject matter to form a reasonable opinion. *Donlin v. Philips Lighting North America*, 564 F.3d 207, 216; *Kelly v. Berlin*, 300 N.J. Super. 256, 268 (App. Div. 1997). *Daubert* and the Federal Rules of Evidence require that an expert witness have sufficient qualifications in the form of knowledge, skills and training and that his knowledge will assist the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 588; Fed. R. Ev. 702. Plaintiff's proposed expert witness, Vincent A. Mancini ("Mancini"), who will testify with regards to the standard of care in the field of construction and building inspection services, has a resume and curriculum vitae demonstrating his experience in the field. Mancini has over 25 years of experience in the construction industry. For over 10 years, he worked for the Philadelphia Housing Authority as a Senior Project Manager, monitoring construction activities and ensuring compliance with construction documentation. Defendant's allegation that Mancini is not currently employed in building inspection, even if true, does not trump his many years of experience in the field.

Turning to the affidavit of merit issue, Defendant is correct that NJSA 2A:53A-26 requires affidavits of merit to be submitted for experts who will testify at trial with respect to the standard of care for licensed persons in specific professions enumerated by the statute. Defendant is also correct that Plaintiff cannot assert expert evidence which falls within the ambit of the statute. However, while Mancini is an architect by trade, Plaintiff has stated that Mancini will not be testifying in his capacity as an architect but rather as an expert in the field of building inspection. As building inspector is not an enumerated profession in the affidavit of merit statutes, an affidavit of merit is not required. Again, as in the 2007 opinion, the Court will entertain motions for sanctions if Plaintiff attempted to introduce Mancini, or any other expert witness, as an expert in a field for which an affidavit of merit is required. However, this has not yet happened, so motions for sanctions at this juncture would be premature.

Because Mancini appears to be a qualified witness able to testify in a manner that will help the jury, because the Federal Rules of Evidence embody a liberal standard for the admission

of expert testimony,  and because an affidavit of merit is not needed for a building inspection expert, summary judgment is denied.

### 3.  Causation

Defendant argues that Plaintiff's negligence claim must fail because Plaintiff has not demonstrated that Defendant was the cause of Plaintiff's harm.  However, Plaintiff has clearly laid out the chain of causation in its complaint and through Mancini's expert report.  Arnold failed to discharge its inspection duties properly, causing defective units to be delivered and installed, resulting in delays and monetary losses for Consult.  Arnold relies upon a letter from DeLuxe in which DeLuxe stated that the presence of mold in the Units in 2001 had no relation to Defendant's conduct or discharge of its duties.  However, just because DeLuxe stated that this was the case, does not make it true as a matter of law, and indeed, Plaintiff has provided evidence to the contrary, via Mancini's expert report.  Moreover, even if true, the letter does not speak to harm caused prior to 2001.  There are issues of material fact to be resolved at trial, and summary judgment is denied.[1]

## III.    CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **DENIED** in its entirety.  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

---

[1]In its reply brief, Defendant also argues that Plaintiff is collaterally estopped from proving causation. Defendant raised this argument for the first time it its reply brief.  As the parties are aware, a reply brief is not the proper forum to raise new issues. Rather, the reply brief is intended only to allow a party to respond to issues raised in the opposition brief. Any issues not raised prior to the reply are deemed waived.  *See U.S. v. Voigt,* 89 F.3d 1050, 1064 (3d Cir. 1996); *Ballas v. Tedesco*, 41 F. Supp.2d 531 (1999).  However, even if the argument had been raised earlier, viewing the evidence in the light most favorable to the non-moving party, collateral estoppel is not implicated in this situation.  At issue in the arbitration proceedings was DeLuxe's liability, not Arnold's.